UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GWENDOLYN TORRES, et al., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 17-1685 |
| v. | : | OPINION |
| GIL VELASQUEZ, et al., | : | |
| Defendants. | : | |

This matter comes before the Court on Motion to Dismiss filed by Defendants Gil Velasquez and Dawn McCargo-Williams, pursuant to Fed, R. Civ. P. 12 (b) (6). The Court has considered the written submissions of the parties, and, pursuant to L. Civ. R. 78 (b), grants the motion because: (a) Defendants enjoy quasi- immunity from suit, (b) Plaintiff fails to state a claim upon which relief can be granted, and (c) Defendants are cloaked in qualified immunity.

I. Background

Defendants Gil Velasquez ("Velasquez") and Dawn McCargo-Williams ("McCargo-Williams") are both New Jersey State employees in the Camden County Probation Office; Velasquez is the Division Chief. Plaintiff Gwendolyn Torres ("Torres") brings this action individually and as Guardian/Personal Representative of Anya Wilson and as Administrator of the Estates of both Scarlett Wilson and Seven Wilson. The underlying facts of this case are tragic.

1

Anya Wilson is the daughter of the deceased Scarlett Wilson, the sister of the deceased Seven Wilson, and the granddaughter of Torres. Am. Comp. ¶ 2. Defendant McCargo-Williams was responsible for the supervision of Leon Wilson during his term of probation beginning January 18, 2013. Id. ¶ 10. Leon Wilson is Scarlett Wilson's son and the brother of Anya and Seven Wilson. Id. ¶ 12. According to the Amended Complaint, on or before April 2014, Leon Wilson communicated to Defendant McCargo-Williams his intent to kill his mother, Scarlett Wilson. Id. Plaintiff claims that Leon Wilson has a documented history of making threats to harm his mother. Id.

On April 13, 2014, Leon Wilson murdered his mother by stabbing her repeatedly. Id. ¶ 15. Scarlett Wilson was pregnant with Seven Wilson at the time of the stabbing and, although he was born alive, Seven eventually died from his injuries on May 1, 2014. Id. at ¶¶ 15, 17. Anya Wilson witnessed the murder of her mother. Id. ¶ 16. The Amended Complaint alleges claims under 42 U.S.C. §§ 1983 and 1988, for violations of the 5th, 8th, and 14th Amendments, on the theory that Defendants are liable for failing to communicate Leon Wilson's threats to Scarlett Wilson.

As a preliminary matter, Plaintiff agrees that the claims against Defendants are alleged in their individual capacity and not in their official capacity.[1] In addition, because the Amended Complaint does not allege that Plaintiff or Plaintiff's decedent and/ or granddaughter were incarcerated at the time of the underlying incident, the

---

[1] The Superior Court of New Jersey and its vicinages are part of the judicial branch of the State of New Jersey and are entitled to Eleventh Amendment immunity. See Johnson v. State of New Jersey, 869 F. Supp. 289, 296-98 (D.N.J. 1994). As a result, employees of the Superior Court of New Jersey when sued in their official capacity are cloaked with sovereign immunity under the Eleventh Amendment. Id. at 298. County probation departments are considered arms of the State and enjoy Eleventh Amendment immunity. See Gencarelli v. Superior Court of New Jersey, No. Civ. A. 04-3332, 2005 WL 1490590, at *3 (D.N.J. June 22, 2005).

Amended Complaint fails to state a claim under the 8th Amendment and the motion to dismiss is granted as to this claim. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In addition, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The claims against Velasquez are solely premised upon a theory of respondeat superior and are dismissed.

For the reasons that follow, Defendants' Motion to Dismiss is granted because, as probation officers, Defendants are cloaked with quasi-judicial immunity with respect to the allegations set forth in the Amended Complaint. Alternatively, Defendants are cloaked with qualified immunity because Plaintiffs' state created danger claim fails as a matter of law.

## II. Standard of Review

Under Rule 12 (b) (6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b) (6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to

relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

### III. Analysis

A. Quasi-Judicial Immunity

Like judges, "quasi-judicial officials acting within the scope of their official duties are absolutely immune." Delbridge v. Schaeffer, 238 N.J.Super. 323, 340, 569 A.2d 872 (Law Div. 1989). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges—that is because they, too, 'exercise a discretionary judgment' as part of their function." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). As quasi-judicial officers, probation officers are cloaked with judicial immunity when they act pursuant to a court directive. Stankowski v. Farley, 251 Fed. Appx. 743, 746 (3d Cir. 2007) (citing Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972)); see also Price El v. Superior Court of New Jersey, No. CIV.A. 11-2213 NLH, 2012 WL 95210, at *4 (D.N.J. Jan. 12, 2012). "Quasi-judicial absolute immunity attaches when a public official's role is functionally comparable to that of a judge." Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir. 2006). This immunity does not attach to actions taken in the probation officers' executive or administrative capacity, but only where the probation officer is acting in an adjudicatory capacity. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986); Thompson v. Burke, 556 F.2d 231, 236 (3d Cir. 1977). Quasi-judicial immunity is overcome where the alleged actions are not taken in their capacities as probation officers or where their actions are taken in the absence of

all jurisdiction. See Mireless v. Waco, 502 U.S. 9, 11–12 (1991); Williams v. Consovoy, 333 F. Supp. 2d 297, 299–300 (D.N.J. 2004), aff'd, 453 F.3d 173 (3d Cir. 2006).

Here, Defendants are employed by the Probation Division of the Camden County Vicinage of the Superior Court of New Jersey. Pursuant to N.J. Stat. Ann. §§ 2B:10-3(d) and 4(b) (2006), both Velasquez[2] and McCargo-Williams are considered judicial employees of the State of New Jersey. The Amended Complaint does not allege any facts to suggest that Defendants' interactions with Scarlett Wilson occurred outside of their duties as probation officers. Rather, inaction is alleged: Plaintiff argues that Defendants should have acted when they learned that Leon Wilson had made threats against his mother and that Defendants should have acted when Leon Wilson failed to comply with the terms of his probation by failing to appear at his mandatory appointed probation meeting before April, 2014. Am. Compl. ¶¶ 13-14. Although the Amended Complaint alleges that the "actions and inactions" of the Defendants' caused harm to the Plaintiffs, there are no actions alleged, only the absence of action.

Defendants' alleged failure to violate Leon Wilson's probation for failure to attend a mandatory meeting falls squarely within the ambit of the probation officers' adjudicatory capacity for which Defendants are entitled to quasi-judicial immunity. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). The Defendants' alleged inaction, by failing to inform Scarlett Wilson of inherent danger from Leon Wilson, is also a function of the supervisory role afforded probation officers in assuring compliance with the terms and conditions of court-ordered probation. Thus, the determination to not

---

[2] Despite being dismissed from the case as noted infra., the Court will also analyze the claims against Velasquez for the sake of completeness.

violate Leon Wilson on the basis of his threats is cloaked with quasi-judicial immunity. Mayes v. Hayes, No. 4:16–CV–00125–JHM, 2017 WL 235192, at *2 (W.D. Ky. Jan. 18, 2017) (noting that probation officers are entitled to quasi-judicial immunity when determining whether an individual has violated the terms of his or her probation).

"The Court of Appeals for the Third Circuit has labored mightily to define the distinction between judicial acts and executive/ministerial acts." Simon v. Ward, No. 99-1554, 2001 WL 41127, at *2 (E.D.Pa. Jan. 16, 2001). The distinction is far from clear and the facts of this case fall within the gray area between actions entitled to quasi-judicial immunity, qualified immunity and actionable claims. For example, the Third Circuit has held that probation officers acting in an executive capacity, i.e., "charg[ing] [a defendant] with wrongdoing and present[ing] evidence to that effect . . . are not entitled to absolute [quasi-judicial] immunity from suit, but only to a qualified, good-faith immunity." Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986).

The facts here allege inaction- failure to charge and failure to inform. The Court finds that these "inactions" fall within the probation officer's executive function of carrying out a judicial order and are worthy of quasi-judicial immunity.

B. 42 U.S.C. § 1983 and Qualified Immunity

Plaintiff's constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . .

7

the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, the parties agree that the Defendants acted within the scope of their authority. The question presented at this stage is whether Plaintiff's rights were clearly established at the time of the incident. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone

is whether the conduct of the official was reasonable at the time it occurred.)  Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant.  See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

Defendants are entitled to qualified immunity because their conduct, as alleged, does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Defendants' alleged decision not to warn Scarlett Wilson of the threats made against her by her son, Leon Wilson, is also entitled to qualified immunity because it does not rise to the level of a state created danger and no constitutional violation occurred.

Plaintiff alleges a substantive due process violation under the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"). There is an indisputable "constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008).  Notwithstanding that interest, the Due Process Clause places no positive obligation on the State to ensure the safety of, or otherwise affirmatively protect, its citizens. Phillips, 515 F.3d at 235 (citing DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 196–197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)) (rejecting the view that the Constitution imposes "affirmative obligations" on the State, and holding that "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide

9

them."). The reasoning that informs this conclusion is the original intent of the Due Process Clause. See DeShaney, 489 U.S. at 196, 109 S.Ct. 998 (observing that the Due Process Clause was designed "to protect the people from the State, not to ensure that the State protected them from each other."); accord Jackson v. City of Joliet, 715 F.2d 1200, 1203 (7th Cir.1983) ("The Fourteenth Amendment ... sought to protect Americans from oppression by state government, not to secure them basic governmental services.").

Significantly, the Third Circuit recognized an exception to this rule when it adopted the state created danger theory. See Kneipp, 95 F.3d at 1211 (holding "that the state created danger theory is a viable mechanism for establishing a constitutional claim under 42 U.S.C. § 1983."). Under that theory, "the state may assume responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger." Kaucher, 455 F.3d at 431 (emphasis added). Four elements are required to allege a cognizable claim:(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Id. (citing Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)); see also Caissie v. City of Cape May, 619 F. Supp. 2d 110, 117–18 (D.N.J. 2009).

Even assuming Plaintiff has stated a cognizable claim as to the first three elements of a state created danger claim, the Amended Complaint fails to set forth the affirmative action contemplated by the fourth element. On this point, the Court's ruling in Caissie is instructive. In Caissie, the plaintiff was violently assaulted by her then-boyfriend at an establishment in Cape May, New Jersey. Caissie, 619 F. Supp. 2d at 111. The police were called and the boyfriend was arrested. Id. During his arrest, the boyfriend told police that he was on probation for an aggravated assault offense and that it "was not over" between him and the plaintiff. Id. Despite this information, the boyfriend was released that evening, without notification to the plaintiff, and, that same night, he attacked the plaintiff causing her severe and permanent injuries. Id. This Court granted the defendants' motion to dismiss on the ground, inter alia, that the plaintiff's allegation that the police failed to warn her was insufficient to sustain a claim under a state created danger theory. Id. at 118-19. In so doing, this Court relied on Third Circuit precedent that remains applicable and held that the failure to directly warn does not rise to the level of an affirmative act for purposes of a state-created danger claim. See Walter v. Pike County 544 F.3d 182, 194-95 (3d Cir. 2008) ("[A] state actor's failure to warn about the likelihood of a private act of violence–even a highly culpable failure to warn– cannot itself predicate liability.").

The Third Circuit explains:

> [A] state actor's failure to warn about the likelihood of a private act of violence–even a highly culpable failure to warn–cannot itself predicate liability. Rather, under the fourth element of a state-created danger claim, liability . . . is predicated upon the state's *affirmative acts* which work to the plaintiff's detriments in terms of exposure to danger, and we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.

Walter, 544 F.3d at 194 (citing Bright, 443 F.3d at 282 (internal quotations omitted)). Moreover, "[i]f a state-created danger claim cannot be predicated on a failure to arrest," the Third Circuit opined, "neither can it be predicated on a failure to provide protection." Walter, 544 F.3d at 195 (citing Bright, 443 F.3d at 284 ("mere failure to protect an individual against private violence does not violate the Due Process Clause.")) (citations omitted). A failure to provide protection is sufficiently broad to encompass a failure to warn. For the sake of clarity, however, the Third Circuit concluded–"if an assurance of well-being despite the presence of a threat is not a sufficiently affirmative act, *neither is the mere failure to warn of a threat.*" Walter, 544 F.3d at 195. (emphasis added).

The Court finds Caissie and the cases relied therein controlling. Here, the absence of an allegation that a state actor took some affirmative action is compelling. As emphasized in Bright and underscored in Phillips:

> Liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the *misuse of state authority, rather than a failure to use it*, that can violate the Due Process Clause.

Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (quoting Bright, 443 F.3d at 282) (emphasis added). For these reasons, Plaintiff fails to identify a constitutional violation. In the alternative, Plaintiff cannot show that Defendants' behavior violated a clearly established statutory or constitutional right. As a result, the motion to dismiss is granted.

## VI. Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted because: (a) Defendants enjoy quasi- immunity from suit, (b) Plaintiff fails to state a claim upon which relief can be granted, and (c) Defendants are cloaked in qualified immunity.

An appropriate Order shall issue.

Dated: November 28, 2017

s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge